(63 App. Div. 273.)

STONE v. NEW YORK MUNICIPAL CIVIL SERVICE COMMISSION OF
CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. July 9, 1901.)

1. MUNICIPAL CORPORATIONS—POLICE—SPECIAL DUTY.

Consolidation Act (Laws 1882, c. 410) § 296, as amended by Laws 1895,.
c. 567, providing that the fitness of the men detailed by the police de-
partment to the sanitary squad, for the enforcement of the provisions
of the Sanitary Code and the acts relating to tenement and lodging
houses, under direction of the board of health, should be ascertained by a
special examination, conducted by the board of civil commissioners, was
repealed by Greater New York Charter, §§ 312, 1324 (Laws 1897, c. 378),
which substantially re-enact Consolidation Act, § 296, and provide that
the fitness of the men detailed to the sanitary squad shall be determined
by the board of police.

2. SAME—IRREGULAR ASSIGNMENT—RIGHT TO SALARY.

The fact that the assignment of officers by the police department to
special duty in the sanitary squad, under direction of the board of health,
is irregular, in that their fitness was not ascertained in the manner re-
quired by statute, will not justify the municipal civil service commission
in refusing to certify the pay rolls of the men so irregularly assigned,.
since they are entitled to their salaries as members of the police force,.
and not because they are detailed to the service of the board of health.

Appeal from special term.

Action by Israel Stone against the New York Municipal Civil
Service Commission of the city of New York and others. From an
order denying plaintiff's motion for an injunction pendente lite and
permission to file a bond therein nunc pro tunc, he appeals. Af-
firmed.

The following is the opinion of SCOTT, J., delivered at special
term:

This is a taxpayer's action, seeking to restrain the New York municipal
civil service commission from certifying the pay roll of the officers and men
now detailed by the police department to what is known as the sanitary
squad, for the enforcement, under the direction of the board of health, of the
provisions of the Sanitary Code and the acts relating to tenement and lodging
houses. The question sought to be raised is whether or not the fitness of the
men so detailed must be ascertained by special examination by the civil
service board, as provided by section 296 of the consolidation act (Laws 1882.
c. 410), as amended by chapter 567 of the Laws of 1895. The defendants
contend, and I think successfully, that that section must be deemed to have
been repealed, because the subject-matter thereof is revised and included
in sections 312 and 1324 of the Greater New York charter (Laws 1897, c. 378),
which substantially re-enact section 296 of the consolidation act, as amended
by the act of 1895, with such changes as to the number of men to be de-
tailed for special duty as were rendered necessary by the increased area of
the present city of New York. The latter one of those sections provides that
the men to be detailed shall be selected for their fitness for the special work
required of them, but leaves the determination of that fitness to the board
of police, instead of leaving it to be ascertained by a special examination by
the board of civil service commissioners. It is not necessary to state at
length the argument which leads to this conclusion, for even if the plaintiff's
contention were to be sustained, and it were to be held that a special
examination is still necessary before a detail could lawfully be made, still
the present motion could not prevail. The men the payment of whose sal-
aries it is sought to prevent are entitled to those salaries, not because they
are detailed to the service of the board of health, but because they are
members of the police force of the city of New York. All the civil service

commissioners have to ascertain before certifying their pay rolls is whether or not they have been properly appointed to the police force. If they have been properly appointed, they are entitled to be paid the salaries provided by law. Notwithstanding their detail, whether properly made or not, they still· remain members of the police force, subject to police discipline, and paid out of moneys appropriated for the payment of salaries of the police force. They are bound to perform such duties as are assigned to them, and, if detailed to the sanitary or tenement house squad, they have no choice, except to perform the duties thus imposed upon them. Even if their assignment to special duty is irregular, that fact does not deprive them of their positions as police officers, or of the right to receive their salaries. Motion denied, with $10 costs.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

S. E. Fairfield, for appellant.
William B. Crowell, for respondents.

PER CURIAM.    Order affirmed, with $10 costs and disbursements, on the opinion of the court below.

---

(35 Misc. Rep. 467.)

METROPOLITAN TRUST CO. OF CITY OF NEW YORK v. DOLGEVILLE ELECTRIC LIGHT & POWER CO. et al.

(Supreme Court, Special Term, Onondaga County. July, 1901.)

1. STREET RAILWAYS—TRUST MORTGAGE—AFTER-ACQUIRED PROPERTY.
    Laws 1890, c. 566, § 60, authorizes the incorporation of electric light companies by their making, signing, and acknowledging a certificate stating the objects of the corporation, etc., and the name of the town and county in which the operations are to be carried on, among other things; and thereupon the persons who signed the same, their associates and successors, shall be a corporation by the name so stated. Held, that a corporation organized under such statute had power to execute a trust mortgage securing its long-term bonds, which would cover after-acquired property, since, if such bonds were to become available and salable in the public market, it was a matter of public necessity that they should be secured by the lien of a mortgage on the company's · extensions and new property.

2. SAME—ATTACHMENT—PRIORITY OF LIEN—FORECLOSURE—SALE AND PARCELS.
    Where, subsequent to the execution of a trust mortgage securing long-term bonds by an electric light company organized as a corporation under Laws 1890, c. 566, § 60, an attaching creditor of the corporation levied on wire bought by the corporation to extend its line, but which had not yet been strung, the mortgage was a superior lien to the execution subsequently issued by the judgment creditor, but on a sale of the · property under foreclosure the property would be sold in parcels, and the wire sold last.

3. SAME—TERMS OF MORTGAGE—CONSTRUCTION.
    Where a mortgage executed by an electric light company to secure its bonds provided that it should cover all and singular the lands, tenements, and hereditaments, and the entire property of said electric light company, the mortgage was sufficient to cover after-acquired property.

4. SAME—CONSTRUCTION OF CHARTER—EXTENSION OF LINE.
    Where the charter of an electric light company provided that its · objects were to be the manufacture and sale of electricity for light, heat, or power in the village of D., in the counties of H. and F., of the state of New York, and in other cities, villages, and towns in said state, such charter was sufficiently broad to authorize the company to extend its · line into an adjoining town.